UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------x
WILLIAM S. WANAGO, M.D.,                :
                                        :
                    Plaintiff,          :     07 Civ. 9829 (LAK) (MHD)
v.                                      :
                                        :
CVS CAREMARK CORPORATION,               :     AMENDED COMPLAINT
                                        :
                    Defendant.          :     Jury Trial Demanded
----------------------------------------------------x

Plaintiff, William S. Wanago, M.D. ("Dr. Wanago"), as and for his amended complaint against defendant, CVS Caremark Corporation ("CVS"), alleges as follows:

1.    This action arises out of the defendants' repudiation of Dr. Wanago's vested stock options – a repudiation that was sudden, without notice, and without justification. As of the commencement of this action, the value of the Options that Dr. Wanago has been denied the right to exercise is over $1,000,000 – which is the measure of the compensatory damages sought in this action.

Parties

2.    Dr. Wanago is a medical doctor who lives and works in the City and State of New York. Dr. Wanago is now, and has been continuously since before the commencement of this action, a New York domiciliary and citizen, inasmuch as he maintains his true fixed home and principal establishment at 166 East 61st Street, New York, New York, and whenever he is absent, he has the intention of returning there.

3.    CVS is a Delaware corporation that has its principal place of business in Rhode Island.

## Jurisdiction and Venue

4.  This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, inasmuch as the plaintiff is a citizen of New York, the defendant is deemed to be a citizen of Delaware and Rhode Island, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.  This matter is properly venued in this district pursuant to 28 U.S.C. §1391(a) and (c), inasmuch as the defendant resides for venue purposes in this district, a substantial part of the events or omissions giving rise to the claim occurred in this district, and the defendant is subject to personal jurisdiction in this district.

## Claim for Relief

6.  At all times relevant to this action, Dr. Wanago has been engaged in the business of providing medical consulting services to corporate clientele.

7.  In 1999, Dr. Wanago entered into an agreement (the "Consulting Agreement") with CVS's predecessor, a company called Advance Paradigm, Inc. ("API").

8.  Under the Consulting Agreement, Dr. Wanago agreed to engage in various marketing and promotional activities and API agreed to pay Dr. Wanago several forms of compensation, including the grant of an option to purchase 20,000 shares of API stock (the "Options") under the terms of API's 1997 Non-Statutory Stock Option Plan (the "Plan").

9.  The Consulting Agreement had an initial term of one year, but automatically and indefinitely renewed for additional one year periods unless terminated

as provided therein. Among other things, the Consulting Agreement was terminable by either party "upon giving ninety (90) days prior written notice to the other party."

10. Neither Dr. Wanago nor API nor any successor to API has ever terminated the Consulting Agreement in accordance with its terms.

11. More specifically, neither API nor any successor to API, including defendant CVS, has ever sent to Dr. Wanago a written notice of termination of the Consulting Agreement (a) by in-person delivery or (b) by registered or certified mail, or courier.

12. Under the terms of the Plan, Dr. Wanago's Options became fully "vested" as of the fifth anniversary of the grant of the Options – that is, in 2004.

13. Through a series of mergers or other combinations, defendant CVS assumed the obligations of API under the Consulting Agreement and Plan.

14. In several transactions that took place from 2004 to early 2007, Dr. Wanago exercised some, but not all, of the Options.

15. Upon the consummation of CVS's acquisition of Caremark Rx, Inc. in or about March 2007, Dr. Wanago still held Options to purchase 26,801 shares of CVS at a "strike price" of $3.15.

16. After the Merger Date, the brokerage known as E*Trade, which CVS had hired as its agent for purposes of administering CVS's options programs, established an account for Dr. Wanago and that account reflected his ownership of Options.

17. However, in June 2007, E*Trade mailed a one-page statement to Dr. Wanago (the "Cancellation Notice") indicating that the Options expired June 20, 2007.

18. The Cancellation Notice was enclosed in an envelope postmarked June 20, 2007 – that is, it was mailed on, and therefore was not intended to reach Dr. Wanago before, the purported expiration date referenced therein. Moreover, the Cancellation was mailed to a mistaken address, such that Dr. Wanago did not actually receive it until the last few days of June 2007.

19. No explanation accompanied the Cancellation Notice and, prior to the Cancellation Notice, neither CVS nor any agent of CVS (including E*Trade) had sent any other notice suggesting that Dr. Wanago's Options were subject to cancellation or expiration.

20. Thereafter, Dr. Wanago, through his counsel, wrote to CVS asking for an explanation of the Cancellation Notice.

21. In response, CVS wrote a letter to Dr. Wanago's counsel claiming that the Options were cancelled because they were not exercised within 90 days of the termination of the "service relationship" between Dr. Wanago and CVS's predecessor.

22. Dr. Wanago, through counsel, by means of a letter dated September 5, 2007, disputed (among other things) the allegation that his "service relationship" had been terminated, and demanded proof of the alleged termination. The September 5 letter also informed CVS that Dr. Wanago wished to exercise his Options during 2007.

23. Defendant CVS did not respond to the September 5, 2007 letter. In particular, CVS has produced to Dr. Wanago no proof that the Consulting Agreement was terminated in accordance with its termination provisions.

24. As of the commencement of this action, the market price of CVS stock was about $42 per share – signifying that the value of the Options that CVS has improperly cancelled is $1,040,000 – i.e., ($42 minus $3.15 times 26,801).

25. Based on the foregoing, CVS has breached its obligations to Dr. Wanago under the Consulting Agreement and under the Plan, by purporting to cancel or otherwise disavow any responsibility to honor the Options.

26. Dr. Wanago has been injured by defendant's breach to the extent of at least $1,000,000, for which defendant should be adjudged liable to plaintiff.

WHEREFORE, plaintiff demands judgment in his favor and against the defendant: (A) adjudging defendant liable to plaintiff for compensatory damages as determined at trial, but in no event less than $1,000,000; (B) adjudging defendant liable to plaintiff, under applicable state law, for the legal expense, including without limitation reasonable attorneys' fees, plaintiff incurs in connection with this action; (C) adjudging defendant liable to plaintiff for costs and interest; and (D) awarding plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
      November 15, 2007

TRACHTENBERG RODES & FRIEDBERG LLP
*Attorneys for Plaintiff*

By: _____
    Leonard A. Rodes (3675)
545 Fifth Avenue
New York, New York 10017
(212) 972-2929